### MICHIGAN WISCONSIN PIPE LINE COMPANY, Petitioner,

v.

### FEDERAL ENERGY REGULATORY COMMISSION, Respondent.

No. 82–3361.

United States Court of Appeals, Sixth Circuit.

Argued June 14, 1983.

Decided Sept. 30, 1983.

Daniel F. Collins (argued), Richard W. Miller, Jr., Brackett & Collins, P.C., Washington, D.C., for petitioner.

Jerome Nelson, Sol., F.E.R.C., Norma J. Rosner, Jerome M. Feit, Sol., Andrea Wolfman (argued), Washington, D.C., for respondent.

Before KEITH and JONES, Circuit Judges, and PHILLIPS, Senior Circuit Judge.

PHILLIPS, Senior Circuit Judge.

Petitioner, Michigan Wisconsin Pipe Line Company (Michigan Wisconsin), seeks review of two orders of the Federal Energy Regulatory Commission (FERC or Commission). These two orders dealt with an issue of contract interpretation concerning the rate of depreciation that could be used in computing the total cost of Michigan Wisconsin's services to another natural gas company, High Island Offshore System (HIOS), for the twelve month period beginning on November 1, 1980: "Order Reversing Initial Decision," 18 FERC ¶ 61,114 (February 12, 1982), and "Order Denying Application for Rehearing," 19 FERC ¶ 61,-036 (April 13, 1982) in *Michigan Wisconsin Pipe Line Company,* Docket No. RP81–1–000.

The disputed depreciation rate is governed by Article IV of a service contract entered into between Michigan Wisconsin and HIOS on August 4, 1977. Relying on one of its prior decisions that involved an interpretation of the same contract article, *Michigan Wisconsin Pipe Line Company,* Docket No. RP80–3, 14 FERC ¶ 61,243 (March 18, 1981), *aff'd, Michigan Wisconsin Pipe Line Company v. FERC,* 705 F.2d 456 (6th Cir., 1982), the FERC reversed the decision of the administrative law judge (ALJ) in this case and held that the article required Michigan Wisconsin to use a much lower depreciation rate than the one it was requesting. Michigan Wisconsin argues on its petition to review that the prior decision relied upon by the Commission is not con-

trolling in the present case and that the denial of its request for an increase in its depreciation rate was based upon an unreasonable interpretation of the Michigan Wisconsin-HIOS contract. We approve the orders of the FERC.

## I.

Michigan Wisconsin is an interstate natural gas pipeline company whose rates and services are subject to FERC jurisdiction under the Natural Gas Act, 15 U.S.C. § 717 *et seq.*[1] It owns and operates a natural gas pipeline network connecting gas producing areas in the Southwest and Gulf Coast regions of the United States with Michigan and Wisconsin, where it is a major supplier to retail natural gas facilities. It also provides natural gas transportation and related services for other pipelines.

HIOS, also a FERC-regulated natural gas pipeline company, transports gas from various offshore sites in the Gulf of Mexico to the onshore terminals of certain interstate pipeline companies, including Michigan Wisconsin. Under the terms of its agreements with most of these companies, HIOS is required to measure, dehydrate and separate any "liquid hydrocarbons" from the natural gas stream it transports. On August 4, 1977, however, HIOS entered into a contract with Michigan Wisconsin which provided that the latter would perform these services.

By order issued on July 6, 1978, the FERC certified the Michigan Wisconsin-HIOS contract and, pursuant to section 7(c) of the Natural Gas Act, 15 U.S.C. § 717f(c),[2] authorized Michigan Wisconsin to construct and operate a facility in Louisi-

---

**1.** 15 U.S.C. § 717c(a) provides as follows:

(a) All rates and charges made, demanded, or received by any natural-gas company for or in connection with the transportation or sale of natural gas subject to the jurisdiction of the Commission, and all rules and regulations affecting or pertaining to such rates or charges, shall be just and reasonable, and any such rate or charge that is not just and reasonable is declared to be unlawful.

**2.** 15 U.S.C. § 717f(c) provides in pertinent part:

(c) No natural-gas company or person which will be a natural-gas company upon

completion of any proposed construction or extension shall engage in the transportation or sale of natural gas, subject to the jurisdiction of the Commission, or undertake the construction or extension of any facilities therefor, or acquire or operate any such facilities or extensions thereof, unless there is in force with respect to such natural-gas company a certificate of public convenience and necessity issued by the Commission authorizing such acts or operations.

ana called the Grand Chenier Facility in order to enable it to perform the above mentioned services for HIOS. *Michigan Wisconsin Pipe Line Co.,* Docket No. CP78–134, 4 FERC ¶ 61,028 (July 6, 1978). Once approved, the contract was filed with the Commission as Michigan Wisconsin's tariff and rate schedule (Rate Schedule X–64). *See* 15 U.S.C. § 717c(c).

Article IV of this contract governs the computation of charges owed by HIOS. It provides in pertinent part that in determining its cost of services, Michigan Wisconsin is to depreciate its investment in the Grand Chenier Facility "based on the rate of depreciation allowed HIOS by the FERC," and also that it is to redetermine its overall charge to HIOS as of November 1 of each year. The article states:

ARTICLE IV

CHARGE FOR SERVICE

HIOS will pay Mich Wisc [Michigan Wisconsin] for the HIOS Capacity an amount equal to sixty-six and two thirds percent (66⅔%) of the full cost of service of the Facility, *which cost of service shall include depreciation of the investment in the Facility based on the rate of depreciation allowed HIOS by the FERC,* Federal, state and local taxes, and the operation and maintenance expenses of the Facility. The full cost of service described in the preceding sentence shall include a return on the net investment in the Facility. Such return shall be the same as Mich Wisc's systemwide rate of return reflected in the filed rates being collected by Mich Wisc on the November 1 redetermination date described below, whether subject to refund or not. The return shall be subject to any reduction and/or refunds ordered by the Commission with respect to the systemwide rate of return used to compute the rate to HIOS on the November 1 redetermination date. With-

out prejudice to the rights of HIOS to contest such charges, *HIOS shall, from and after the date of initial deliveries, pay Mich Wisc monthly one-twelfth (¹⁄₁₂) of the above charge, which shall be redetermined as of November 1, 1978 and as of November 1st of each year thereafter.*

\*  \*  \*  \*  \*  \*

(Emphasis added).

On October 1, 1980, in accordance with Article IV above and 15 U.S.C. § 717c(d),[3] Michigan Wisconsin filed its annual application, or tariff sheet, with the FERC requesting a change in the overall rate it charges HIOS for its services for the twelve month period beginning November 1, 1980. In computing the depreciation expense owed by HIOS, Michigan Wisconsin used a rate of 7.14% for the months of November and December 1980 and a rate of 19.1% for the ten month period from January 1 to October 31, 1981. The 7.14% rate coincided with the rate of depreciation allowed HIOS by the FERC at the time the application was filed and subsequently on the November 1, 1980 redetermination date. The increased rate of 19.1% represented an attempt by Michigan Wisconsin to account for a change in the method of depreciation that had been proposed by HIOS to the FERC—a change from a straight line method of depreciation to a unit of production method. Michigan Wisconsin anticipated that HIOS' proposed change would be approved by the FERC with an effective date of January 1, 1981, and adjusted its rate schedule accordingly.

HIOS had previously filed a new rate schedule in August 1979, requesting a change to the unit of production depreciation method and the use of a 19.1% rate of depreciation which allegedly would result from an application of this method. The request initially was rejected by the FERC because HIOS had not utilized the correct filing procedures for making rate changes

---

**3.** 15 U.S.C. § 717c(d) provides in pertinent part:

(d) Unless the Commission otherwise orders, no change shall be made by any natural-gas company in any such rate, charge, classification, or service, or in any rule, regulation, or contract relating thereto, except after thirty days' notice to the Commission and to the public.

under the Natural Gas Act. *High Island Offshore System, et al.,* Docket Nos. CP75–104 and CP76–118, 11 FERC ¶ 61,085 (April 28, 1980). Subsequently, however, HIOS made a corrected filing and an increase in its depreciation rate took effect on January 1, 1981, but at a rate much lower than 19.1%. The rate ultimately approved for HIOS for the period in question was a straight line rate of only 8.7%. Docket No. RP81–18–001 and CP75–104–024, *et al.,* 19 FERC ¶ 61,245 (June 3, 1982) (approved subsequent to the issuance of the FERC's final order in the present case). Thus, although Michigan Wisconsin's proposed tariff sheet in this case includes a 19.1% depreciation rate, it now is seeking approval of a substituted 8.7% rate.

On October 31, 1980, the Commission issued an order allowing Michigan Wisconsin's proposed rate to become effective on November 1, 1980, on a suspended basis, subject to refund. *Michigan Wisconsin Pipe Line Company,* Docket No. RP81–1–000, 13 FERC ¶ 61,093. It directed that a conference be convened before an administrative law judge (ALJ) to determine the lawfulness of this rate. As a result of the negotiations between Michigan Wisconsin and the FERC staff, all issues associated with the proposed rate change were settled except for the question of the appropriate depreciation rate to be allowed in calculating the total service cost to HIOS for the period from January 1 through October 31, 1981. This issue was submitted to the ALJ for determination, and both the FERC staff and Michigan Wisconsin filed motions for summary judgment.

The dispute, which was solely between the Commission and Michigan Wisconsin, centered around the proper interpretation of the relationship between the depreciation clause and the November 1 redetermination date in Article IV of the Michigan Wisconsin-HIOS contract. The Commission staff argued that these two provisions are tied together in that Michigan Wisconsin must use the rate of depreciation allowed HIOS by the FERC as of the November 1 redetermination date in calculating its total cost of services for the twelve month period that

follows—a 7.14% depreciation rate in this case. Since the depreciation rate increase sought by HIOS did not become effective until January 1, 1981, the staff concluded that it could not be used by Michigan Wisconsin for purposes of making its November 1, 1980 rate redetermination. In support of this conclusion, the staff relied on a prior FERC decision in *Michigan Wisconsin Pipe Line Co., supra,* RP80–3, 14 FERC ¶ 61,243 (March 18, 1981), *aff'd, Michigan Wisconsin Pipe Line Co. v. FERC,* 705 F.2d 456 (6th Cir., 1982), as persuasive authority. In that case the FERC interpreted Article IV of the Michigan Wisconsin-HIOS contract as providing that the "rate of return" used in calculating Michigan Wisconsin's annual cost of service must be the rate finally authorized as of the November 1 redetermination date.

Michigan Wisconsin, on the other hand, contended that the intent of the parties to the contract with respect to the depreciation of the Grand Chenier Facility was that its depreciation rate always would coincide with that allowed HIOS, without consideration of whether HIOS' rate was in effect on the November 1 redetermination date. It asserted that the FERC's decision in Docket No. RP80–3 was inapplicable in the present case because it dealt with the interpretation of a different clause in Article IV.

In a decision issued on September 3, 1981, the ALJ granted summary judgment in favor of Michigan Wisconsin, holding that the prior FERC decision relied upon by the staff was not controlling or persuasive authority in this case, and that the depreciation clause in Article IV was not tied to the November 1 redetermination date. 16 FERC ¶ 63,039 (September 3, 1981). Michigan Wisconsin was permitted to continue collecting its proposed depreciation rate for the period January 1 through October 31, 1981, subject to final approval by the Commission.

Upon an appeal by the staff, however, the Commission reversed the decision of the ALJ and held that Michigan Wisconsin had to recompute its cost of service for this

period using a depreciation rate of 7.14% and make an appropriate refund to HIOS. The Commission reasoned that the ALJ erred in ignoring the Commission's prior decision in Docket No. RP80–3, and that the staff's interpretation of Article IV was the correct one. Docket No. RP81–1–000, 18 FERC ¶ 61,114. Michigan Wisconsin filed an application for rehearing, but this request was denied by the Commission in an order dated April 13, 1982. The present petition for review followed.

## II.

The central issue before this Court is whether the FERC erred in holding that its prior decision in Docket No. RP80–3 was controlling in the present case and required that Article IV of the Michigan Wisconsin-HIOS contract be interpreted as providing that Michigan Wisconsin must use the HIOS depreciation rate in effect on the November 1 redetermination date in calculating its cost of services.

As previously indicated, the prior FERC decision in question dealt with the relationship between the "rate of return" clause and the November 1 redetermination date in Article IV of the Michigan Wisconsin-HIOS contract. At the time of the Commission's determination in that case, Article IV provided in pertinent part that HIOS was to pay Michigan Wisconsin a return on its investment in the Grand Chenier Facility "based on the Rate of Return of Mich Wisc [Michigan Wisconsin] as finally authorized from time to time by the . . . Commission . . ." Like the depreciation rate allowed for its facility, this rate is another cost element in Michigan Wisconsin's total service charge.

The dispute arose when Michigan Wisconsin filed its proposed rate schedule for the twelve month period beginning on November 1, 1979. Instead of using the rate of return in effect on that date (10.4%) in computing its service charge, it used an 11.4% rate that had not yet been approved but was pending before the Commission and being collected on a suspended basis, subject to refund. The Commission staff challenged the use of this rate because it had not been "finally authorized" as of the November 1 redetermination date.

In a decision issued on August 21, 1980, the ALJ determined that "the agreement [Article IV] when read in its entirety allows for the use only of that rate of return approved by the latest Mich Wisc [Michigan Wisconsin] systemwide rate case finally authorized by the Commission by and inclusive of the applicable November 1 Redetermination date." *Michigan Wisconsin Pipe Line Company,* Docket No. RP80–3, 12 FERC ¶ 63,036 (August 21, 1980). This decision was affirmed by the Commission, 14 FERC ¶ 61,243 (March 19, 1980), and subsequently by this court, *Michigan Wisconsin Pipe Line Co. v. F.E.R.C.,* 705 F.2d 456 (6th Cir., 1982).

In the present case, the Commission determined that Docket No. RP80–3 was controlling authority based on the following reasoning:

The ALJ here erred in ignoring the Commission's decision in Docket No. RP80–3 and in determining that Article IV stands for two separate propositions. The key issue here, which is identical to an issue in Docket No. RP80–3, is the relationship between clauses in Article IV governing the cost of service and the November 1 redetermination date. There is no basis for interpreting the relationship between the depreciation clause and the November 1 redetermination date any differently than the Commission has already construed the relationship between the rate of return clause and the November 1 redetermination date. Consistent with our determination in Docket No. RP80–3, Article IV provides that the cost of service shall include depreciation of the investment in the Grand Chenier facility based on the rate of depreciation allowed HIOS by the Commission as of November 1. In the words of Michigan Wisconsin's witness in Docket No. RP80–3, that construction is "perfectly consistent with the language and intent of our contract". The depreciation clause and the November 1 redetermination date are linked.

Docket No. RP81–1–000, "Order Reversing Initial Decision," 18 FERC ¶ 61,114 (February 12, 1982). Further analysis in support of its determination was provided by the Commission in its "Order Denying Application for Rehearing," 19 FERC ¶ 61,036 (April 13, 1982):

(1) Michigan Wisconsin argues that the decision in Docket No. RP80–3 is not controlling in this proceeding and disputes the Commission's interpretation of Article IV. In Docket No. RP80–3 all parties, the Administrative Law Judge (ALJ), and the Commission agreed that the issue to be resolved under Article IV was the "rate of return of Michigan Wisconsin as finally authorized from time to time" by the Commission as of the November 1 redetermination date. The issue to be resolved under Article IV in Docket No. RP80–3, thus, did not simply involve a determination of the "rate of return of Michigan Wisconsin as finally authorized from time to time" by the Commission but rather a more specific and focused inquiry concerning that rate of return, "as of November 1st of each year".

In so framing the issue to be resolved in Docket No. RP80–3, the parties, the ALJ, and the Commission construed Article IV at tying the rate of return element, which is one of the specified elements of the cost of service, to the November 1 redetermination date. Michigan Wisconsin's witness, in agreeing with Commission staff on the specific nature of the issue to be resolved under Article IV, used the phrase "*as of* the November 1 redetermination date" and referenced the *language* and *intent* of the contract as support for this conclusion. *Michigan Wisconsin Pipe Line Company*, Docket No. RP80–3, 12 FERC ¶ 63,036 at 65,106 (August 21, 1980). The ALJ indicated that the rate of return element was tied to the November 1 redetermination date and stated that the agreement should be read "in its entirety". *Michigan Wisconsin Pipe Line Company*, Docket No. RP80–3, 12 FERC ¶ 63,036 at 65,110 (August 21, 1980). In Docket No. RP80–3 the Commission determined that the rate

of return clause in Article IV must be read *in pari materia* with the November 1 redetermination date in Article IV. In Docket No. RP80–3 the November 1 redetermination date in Article IV was construed to provide both the date for the redetermination of the cost of service and the reference point for the derivation of cost of service components.

Having determined in Docket No. RP80–3 that the rate of return clause in Article IV should be interpreted together with the November 1 redetermination date in Article IV, there is simply no basis in the language of Article IV, as originally written or as amended, for now concluding that the depreciation clause, which, like the rate of return clause, ties the rate to a specific rate referenced in the agreement, is not integrally related with the November 1 redetermination date in Article IV. Thus, while Michigan Wisconsin is literally correct in stating that the Commission only considered the relationship between the rate of return clause and the November 1 redetermination date in interpreting Article IV in the prior docket, Article IV does not permit a construction of the relationship between the depreciation clause and the November 1 redetermination date which is at variance with that settled uncontested interpretation of the contract and tariff in Docket No. RP80–3. Under Article IV both the rate of return clause and the depreciation rate clause are tied to the November 1 redetermination date.

(Emphasis in original; footnote omitted).

After careful review, this court concludes that the FERC's prior determination in Docket No. RP80–3 controls the contract interpretation question involved in the present case. We adopt the reasoning set forth by the Commission in its "Order Reversing Initial Decision," 18 FERC ¶ 61,114 (February 12, 1982), and "Order Denying Application for Rehearing," 19 FERC ¶ 61,-036 (April 13, 1982), in support of our conclusion. As indicated in these orders, the same basic issue is involved in both cases: the relationship between a cost element in

Michigan Wisconsin's total service charge and the November 1 redetermination date. In light of the FERC's holding in Docket No. RP80–3 that one of these cost elements, the rate of return, is tied to the November 1 redetermination date, it would be unreasonable to interpret the relationship between another such element, the depreciation rate, and the redetermination date on a different basis. The Commission correctly held that Michigan Wisconsin must use the depreciation rate in effect as of November 1, 1980 (7.14%) in calculating its service charge for the period in question.

We agree with the decision of the Commission. No costs are taxed. The parties shall bear their own costs in this Court.